# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-CR-82-TCK |
| | ) | (Civil Case 07-CV-595-TCK-FHM) |
| CAYETANO AVALOS SANCHEZ, | ) | |
| a/k/a Calletano Avalos Sanchez | ) | |
| a/k/a Alberto Rivera Avalos | ) | |
| a/k/a Jose Luis Avalos Rivera | ) | |
| a/k/a Cholo, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 33) ("§ 2255 Motion") and Motion for Order to Compel Attorney Gregg Lee Graves to Forward Petition His "Case File" ("Motion to Compel") (Doc. 36). The Government filed a combined response (Doc. 40), and Defendant filed a reply (Doc. 41).

**I.      Background**

On March 31, 2006, Tulsa Police Department ("TPD") officers executed a Tulsa County search warrant ("Search Warrant") of 13223 E. 31st Pl., #1313 ("Apartment Search"). One TPD officer executing the Search Warrant was Officer Wolthius ("Wolthius"). The target of the investigation was Jose Doe, a/k/a "Shorty" and "Alberto Avalos."[1] Defendant and his girlfriend were found in the apartment, along with marijuana, cocaine, methamphetamine, scales, plastic

---

[1] Alberto Avalos was the name being used by Defendant Cayetano Avalos Sanchez. Fingerprint records have confirmed that Alberto Avalos and Cayetano Avalos Sanchez are the same person. Defendant signed the Plea Agreement in this case as "Alberto Avalos."

baggies, a loaded 9 mm handgun, a loaded rifle, and various personal documents in the name of Alberto Avalos. After being arrested, Defendant was released on bail.

On April 3, 2006, while Defendant was released on bail, Wolthius was working off-duty security at a Motel 6. Wolthius discovered that an "Alberto Avalos" was checked into the motel. Wolthius called back up and then went to speak with Defendant. According to the Plea Agreement, Defendant consented to search of his motel room ("Motel Search"), and Wolthius entered the room with Defendant's key. In a hidden baggie in the motel room, officers found approximately 720 grams of cocaine and a loaded 9mm pistol.

On April 17, 2006, Magistrate Judge Paul Cleary entered a Criminal Complaint ("Complaint") and an Arrest Warrant ("Arrest Warrant") in Case Number 06-MJ-39. The Complaint and Arrest Warrant were supported by an Affidavit of Jared Yates ("Yates"), a federal agent. Yates' Affidavit describes the Apartment Search and items seized therefrom; it does not describe the Motel Search or any items seized therefrom. This Arrest Warrant was never executed.

On May 3, 2006, a federal grand jury returned a ten-count Indictment against Defendant: Count 1 – possession with intent to distribute 50 grams or more of methamphetamine; Count 2 – possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine; Count 3 – possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of marijuana; Count 4 – possession of two firearms in furtherance of the drug trafficking crimes set forth in Counts 1-3; Count 5 – illegal alien in possession of firearms and ammunition; Count 6 – Re-entry after deportation; Count 7 – possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine; Count 8 – possession of a firearm in furtherance of the drug trafficking crime

alleged in Count 7; Count 9 – illegal alien in possession of firearms and ammunition; and Count 10 – Re-entry after deportation. Counts 1-6 occurred on or about March 31, 2006 and were based upon evidence seized during the Apartment Search. Counts 7-10 occurred on or about April 3, 2006 and were based upon evidence seized during the Motel Search.

On August 15, 2006, Defendant pled guilty to Counts 1, 4, 7, and 10. Thus, Defendant pled guilty to possessing with intent to distribute 50 grams or more of methamphetamine and possessing firearms in furtherance of such crime, both of which were found during the Apartment Search. Defendant also pled guilty to possessing with intent to distribute 500 grams or more of cocaine, which was found during the Motel Search. Defendant also pled guilty to being found in the United States after having been deported.

Defendant entered into a Plea Agreement, which sets forth an extensive factual basis for Defendant's plea of guilty to these four counts. (*See* Plea Agreement, Ex. 1 to Doc. 24, at 7-11.) The Plea Agreement contained the following language under the heading "Appellate and Post-Conviction Waiver:"

> In consideration of the promises and concessions made by the United States in this Plea Agreement, the defendant knowingly and voluntarily agrees to the following terms:
> . . .
> d. The defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver
> . . . .

(*See* Ex. 1 to Doc. 24, at 3.) This section is hereinafter referred to as the "Waiver."

On November 14, 2006, the Court sentenced Defendant to a total term of 192 months, comprised of 132 months on Counts 1 and 7, 24 months on Count 10, and 60 months on Count 4. The sentences for Counts 1, 7, and 10 were ordered to run concurrently, and the sentence for Count

4 was ordered to run consecutively to the other three terms. Defendant did not file a direct appeal. Defendant was represented by attorney Gregg Graves ("Graves") at all relevant times.

Now pending before the Court is Defendant's § 2255 motion, which raises six grounds for relief. All six grounds allege that Defendant received ineffective assistance of counsel. Specifically, Defendant alleges that Graves was ineffective by: (1) "[n]ot filing pre-trial Motions to suppress the evidence seized during the illegal search of Defendant's residence," ("Ground 1");[2] (2) "[n]ot filing a Motion to dismiss the Indictment for lack of personal jurisdiction because Petitioner was not the subject of the crime being investigated" ("Ground 2"); (3) "[a]dvising Petitioner to plead guilty to crimes for which he had an absolute defense too [sic]" ("Ground 3"); (4) "[n]ot obtaining a concession from Government Counsel that Petitioner should be sentenced to the mandatory minimum for the crimes he was pleading guilty too [sic] ("Ground 4"); (5) "[n]ot arguing forcefully for a 'Booker' departure based on the characteristics of the Petitioner" ("Ground 5"); and (6) "[n]ot filing an Appeal . . . as Petitioner discussed with counsel after being given the unreasonably excessive sentence by Judge Kern" ("Ground 6"). (*See* § 2255 Motion 2.)

**II.     Waiver**

"[A] waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). The Tenth Circuit has outlined a three-prong test for determining whether a defendant has waived appellate rights in a plea agreement, *see United States v. Hahn*, 359 F.3d 1315, 1325 (10th

---

[2] The Court construes Ground 1 as challenging Graves' failure to move to suppress evidence seized during the Apartment Search and the Motel Search. The Court ordered additional briefing regarding the Apartment Search. (*See* Docs. 42, 45, 46.)

Cir. 2004), and has extended such analysis to waivers of collateral review rights, *see United States v. Wales*, No. 05-3445, 2006 WL 950655, at *2 (10th Cir. April 13, 2006). Thus, a defendant's waiver of collateral review rights is binding if: (1) the scope of the waiver covers the collateral attack; (2) the waiver was knowing and voluntary; and (3) enforcement of the waiver would not result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1325; *Wales*, 2006 WL 950655 at *2 (applying *Hahn* in context of waiver of collateral review rights); *United States v. Jackson*, No. 05-CR-58-C.E., 2007 WL 1690963, at *4 (N.D. Okla. June 11, 2007) (same).

  A. <u>Scope</u>

The Waiver excepts any "claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver." (*See* Ex. 1 to Doc. 24, at 3.) The Waiver therefore incorporates and is consistent with Tenth Circuit law that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." *Cockerham*, 237 F.3d at 1187.[3] In order for an ineffective assistance claim to challenge the validity of the guilty plea or the waiver, *i.e.*, in order to qualify for the *Cockerham* exception, the particular ineffective assistance argument must "bear more than a tangential relationship to the plea agreement waiver." *Masters*, 317 Fed. Appx. at 755. Instead, a defendant must directly tie his attorney's conduct in other areas of the criminal proceedings to the advice the attorney provided him in connection with his decision to plead guilty in order to qualify for such exception. *Id.*

---

[3] This is known in the Tenth Circuit as the *Cockerham* exception. *See United States v. Masters*, 317 Fed. Appx. 750, 755 (10th Cir. 2009) (referring to *Cockerham* exception to general enforceability of collateral review waivers).

1. Grounds 1-3

In Ground 1, Defendant contends that Graves was ineffective based on his failure to file a suppression motion. In Ground 2, Defendant contends Graves was ineffective based on his failure to file a motion to dismiss. In Ground 3, Defendant contends Graves was ineffective because he advised Defendant to plead guilty before attempting to dismiss the charges or suppress evidence forming the basis of certain of his convictions. In his brief, Defendant ties Graves' failures to file these pretrial motions to Graves' advising him to enter a plea of guilty by arguing that Graves was ineffective for advising him to plead guilty "to crimes for which he had an absolute defense." (*See* Memorandum in Support of § 2255 Motion 2.) Defendant set forth two "defenses" – both related to probable cause supporting the Apartment Search and Motel Search – as his first two grounds for relief. In addition, Defendant argues that "the Court lacked personal and subject matter over the charges to try Petitioner; hence any advice to plead guilty to such charges is facially deficient . . . [Graves] was mandated to [do] a reasonable investigation which would have revealed the defense(s)." (§ 2255 Mot. 5.)

Construed liberally, Grounds 1-3 allege that Graves was ineffective by advising Defendant to plead guilty to charges without first filing certain pretrial motions that could have reduced or eliminated the charges. Defendant tied these failures to his decision to plead guilty. Grounds 1-3 qualify for the *Cockerham* exception because they attack the validity of the plea. *See Jackson v. United States*, 252 Fed. Appx. 918, 921 n.2 (10th Cir. 2007) (affirming district court's conclusion that ineffective assistance claim of failure to file motion to suppress and resulting faulty advice to enter plea fell outside waiver and qualified for *Cockerham* exception) ("Given that Mr. Jackson's ineffective assistance of counsel claim directly ties his attorney's conduct in failing to file a motion

6

to suppress to the advice the attorney provided him in connection with his decision to plead guilty, we are comfortable operating on the view that Mr. Jackson's ineffective assistance of counsel claim is not barred by his collateral-attack waiver.").[4] Therefore, Grounds 1-3 fall outside the scope of the Waiver and will be addressed by the Court in Part III.

2. Ground 4

Ground 4 alleges ineffective assistance of counsel in failing to obtain a guarantee of a statutory minimum sentence as part of Defendant's plea agreement. This challenge is related to Graves' ineffective assistance in negotiating the terms of the plea agreement and falls outside the scope of the Waiver. *See Cockerham*, 237 F.3d at 1187 (holding that ineffective assistance claims are generally not barred by waiver in plea agreement if they challenge counsel's representation in "negotiating" or entering the plea or the waiver); *United States v. Nunez-Fuentes*, 184 Fed. Appx. 795, 796-97 (10th Cir. 2006) (describing the defendant's argument that his counsel should have negotiated a safety valve credit as part of a plea agreement as a challenge to the "validity of the plea agreement"); *see generally United States v. Novosel*, 481 F.3d 1288, 1295 (10th Cir. 2007) (stating that an ineffective assistance claim based on failure to negotiate a more favorable plea agreement

---

[4] It appears that, in some instances, a defendant can waive his argument that counsel was ineffective by failing to file a motion to suppress. *See United States v. Abston,* 401 Fed. Appx. 357, 365 (10th Cir. 2010) (noting that ineffective assistance of counsel claim based on failure to file motion to suppress "appear[ed] to be" and was "likely" barred by collateral-attack waiver in plea agreement but reaching merits of arguments because government did not seek to enforce the waiver, thereby waiving its right to do so) (reasoning that such claims did not "even arguably relate to counsel's performance in negotiating or entering into the plea or waiver"); *United States v. Fernandez*, No. 08-10141, 2011 WL 1541280, at *5 (D. Kan. April 21, 2011) (ineffective assistance of counsel claim relating to attorney's failure to file motion to suppress did not relate to the validity of the plea or waiver and was therefore barred by § 2255 waiver in plea agreement); *United States v. Dozal*, No. 10-2675, 2011 WL 1527023, at *2 (D. Kan. April 19, 2011) (same). In this case, Defendant expressly tied counsel's failures to file pre-trial motions to his plea decision. The Court therefore follows the reasoning in *Jackson* and *White*.

7

is properly brought in § 2255 motion and is outside scope of waiver). Ground 4 is addressed in Part III below.[5]

   3.  Grounds 5-6

Ground 5 relates to Graves' failure to argue for a discretionary departure at sentencing. Specifically, Defendant contends in Ground 5 that Graves "did not effective[ly] argue for a correct application of guideline calculation" because Defendant "falls into a number of categories under 18 U.S.C. § 3553, which would have allowed the Court to depart from the guidelines range. . . ." (§ 2255 Mot. 7.) As to Ground 5, the alleged misconduct by Graves involves failures at the time of sentencing and is not tied in any way to Graves' advice or representations at the time of the plea. Therefore, Ground 5 cannot reasonably be characterized as an attack on the validity of the plea. *See Cockerham*, 237 F.3d at 1188 (holding that the defendant's argument that counsel was ineffective by failing to require the government to present certain proof during sentencing hearing was not an attack on the validity of the plea and was waived by post-conviction waiver in plea agreement).

Ground 6 relates to Graves' failure to directly appeal Defendant's sentence, arguing that the Court should have imposed a non-guidelines sentence due to Defendant's personal history and characteristics. For similar reasons explained above, this failure cannot be characterized as an attack on the validity of the plea. Graves' alleged misconduct of failing to file a direct appeal regarding the reasonableness of Defendant's sentence occurred well after the plea was entered, and Defendant has not tied Graves' alleged misconduct to his decision to enter a plea. *See United States v. Fernandez*, No. 08-10141, 2011 WL 1541280, at *5 (D. Kan. April 21, 2011) (ineffective assistance

---

  [5] Because Grounds 1-4 fall outside the express scope of the Waiver in this case, the Court need not reach the remaining two *Hahn* requirements.

claim relating to attorney's failure to file a direct appeal did not relate to the validity of the plea or waiver and was therefore barred by § 2255 waiver in plea agreement). Therefore, Grounds 5 and 6 are within the scope of the Waiver, and the Court will proceed to analyze whether Grounds 5 and 6 satisfy the remaining *Hahn* requirements for a valid waiver.

      B.      <u>Knowing and Voluntary</u>

When deciding whether a waiver is knowing and voluntary, a court looks to two factors: (1) whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily, and (2) the adequacy of the Rule 11 plea colloquy. *Hahn*, 359 F.3d at 1325. A defendant bears the burden of showing that he did not knowingly and voluntarily enter into the plea agreement. *Id.* at 1329.

Upon review of the Rule 11 colloquy, the plea agreement, and the petition to enter a plea of guilty, the Court finds that they were entered knowingly and voluntarily for several reasons. First, the plea agreement and the petition to enter a plea of guilty are both signed by Defendant, and both state that Defendant entered the plea agreement knowingly and voluntarily. Second, the Court conducted a thorough Rule 11 plea colloquy before accepting Defendant's plea. The Court addressed Defendant personally and ensured that the plea was voluntary and did not result from force, threats, or promises other than the promises contained in the plea agreement. The Court also reviewed the Waiver with Defendant, and Defendant indicated that he understood the Waiver. *See Jackson*, 2007 WL 1690963, at *6 (analyzing similar factors in determining whether a waiver was entered knowingly and voluntarily).

C.  Miscarriage of Justice

An appellate or post-conviction waiver results in a miscarriage of justice only (1) where the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, and (4) where the waiver is otherwise unlawful. *See Hahn*, 359 F.3d at 1327. With respect to the fourth factor, a waiver is "otherwise unlawful" only if a court committed plain error that affects a defendant's "substantial rights." *See id.* at 1327, 1329. To affect a defendant's "substantial rights," the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *See id.*

The first three examples of potential miscarriages of justice are not applicable. The Court also concludes that precluding Grounds 5 and 6 as waived will not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Grounds 5 and 6 relate to Graves' failure (1) to urge the Court to impose a non-guidelines sentence based on Defendant's personal history and characteristics at sentencing, and (2) to appeal the Court's failure to impose a non-guidelines sentence. These alleged sentencing errors are, however, wholly discretionary with the Court, and failure to impose a non-guidelines sentence did not result in any plain error or other miscarriage of justice. Further, the Court was well aware of its ability to impose a non-guidelines sentence and was also aware of Defendant's personal history and characteristics explained in the PSR. Therefore, Grounds 5 and 6 are barred by the Waiver.

### III. Non-Waived Ineffective Assistance Claims

The two-part standard governing ineffective assistance of counsel claims, first set forth in *Strickland v. Washingston*, 466 U.S. 668 (1984), applies to ineffective assistance claims arising out

10

of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."); *Williams v. Jones*, 571 F.3d 1086, 1090 n.3 (10th Cir. 2009) (noting that same test applies whether allegedly deficient performance results in acceptance or denial of a plea agreement). In order to prevail under this standard, Defendant must show that (1) Graves' performance fell below an objective standard of reasonableness; and (2) Graves' performance was so prejudicial "there is a reasonable probability that, but for his unprofessional errors, the result of the proceeding would have been different." *See United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997).

Analysis of the first prong does not change in the context of a guilty plea. *See Hill*, 474 U.S. at 59. A defendant establishes the first prong by showing that his counsel performed below the level expected from a reasonably competent attorney in criminal cases. *Strickland*, 466 U.S. at 687-88. A court must judge counsel's conduct on the facts of each particular case and as of the time of counsel's allegedly deficient conduct. *Id.* at 690. A court's review of counsel's performance is highly deferential. *Id.* at 689. To establish the second prong, in the context of a guilty plea, a defendant must show that there is a reasonable probability that, but for the alleged error, the defendant "would not have pleaded guilty and would have insisted on going to trial." *See id.* (explaining prejudice prong in context of allegation that ineffective assistance led to guilty plea).

    A.    <u>Ground 1 - Failure to File Suppression Motion</u>

It is well established that counsel is not required to file meritless motions. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (cited with approval in *Jackson*, 252 Fed. Appx. at 921); *Jackson*, 2007 WL 1690963, at *8 ("Given that a meritorious Fourth Amendment issue is necessary to the success [of] defendant's claim in Ground One, it follows that a meritless claim is fatal to his

ineffective assistance of counsel."); *Byrd v. United States*, No. 07-CV-1060, 2008 WL 2676355, at *2 (E.D. Mo. July 1, 2008) ("[Whether Movant received ineffective assistance of counsel hinges on whether his motion to suppress would have been successful."). Thus, the Court will analyze whether Defendant had a meritorious Fourth Amendment issue that Graves failed to raise in a motion to suppress. Defendant challenges both the Apartment Search and the Motel Search, both of which yielded evidence supporting Defendant's convictions.

1.  Apartment Search

Defendant argues that he "was arrested at his home pursuant to an arrest warrant issued by the magistrate judge" and that the "probable cause for this warrant was lacking." (Memorandum in Support of § 2255 Motion 13.) At paragraphs 6-15 of his Statement of Facts, Defendant sets forth the factual basis for his argument that the Apartment Search violated his Fourth Amendment rights:

> [A] Criminal Complaint was filed against Petitioner Avalos before the Magistrate Judge Paul J. Cleary (Judge Cleary). That same day, Magistrate Judge Cleary issued a Warrant for Petitioner's arrest based on the Complaint as filed. The Complaint, as best as can be remembered by Petitioner, as he has been unable to secure his criminal file from his prior attorney; alleged that Petitioner was an illegal alien and that he had participated in a sale of narcotic drugs to a Confidential Informant (CI). Petitioner informed his attorney of record that he did not make the sale of narcotics as alleged in the Complaint. In fact, Petitioner is not even an illegal alien as believed prior to his arrest. He is, in fact, a nationalized American citizen. But of more import is the fact that the CI has never been shown, nor was he alleged to have been, a reliable source nor that he had been of use in the past. There is absolutely nothing in the Complaint or other papers filed with it that show that the information in them is correct or trustworthy. There was no evidence to show that Petitioner had been at the location where the alleged sale had taken place. And Petitioner has not been told by his attorney or through the interpreter why it is that there is no showing as to the validity of the CI's statements. In fact, the Record does not even show that the Agent and/or the CI were questioned by the Magistrate to insure that the information was reliable and accurate. Which also shows that the evidence was so sparse and weak that there was not even a search warrant issued for Petitioner's home. There is nothing to connect him with any drug dealing other than the CI's statements, nor anything to connect his residence to drug dealing. But yet when Petitioner was arrested at his residence, the agents/officers all participated in a thorough search of

the residence and do so by looking in every accessible place. The agents opened draws, looked in boxes, inside cabinets, in dresser, under beds, etc. The search that was done to Petitioner's residence was thorough and complete and "no stone was left unturned." The agents made sure that they did not miss anything in the entire apartment -- even though Petitioner had his own room and this is the only room that he had total dominion over.

(*Id.* at 3-5, ¶¶ 6-15.)

Defendant's argument is flawed and does not convince the Court that Graves' failure to move to suppress evidence seized during the Apartment Search fell below an objective standard of reasonableness. Defendant's argument is based upon the erroneous premise that officers conducted the Apartment Search pursuant to an Arrest Warrant issued by Magistrate Judge Paul Cleary. The Apartment Search was conducted on March 31, 2006, prior to Judge Cleary's issuance of the Arrest Warrant. As explained above, the Apartment Search was conducted pursuant to the Search Warrant, which was issued by Tulsa County District Court. Thus, any arguments regarding the Arrest Warrant are irrelevant to the validity of the Apartment Search.

Assuming Defendant is attempting to challenge whether the Search Warrant was supported by probable cause, this argument is wholly without merit. The Affidavit for Search Warrant, which was prepared by Wolthius, provides:

> Your affiant states that he and other officers from the Tulsa Police department have received information about an individual selling and storing large amounts of cocaine. Your affiant states that the person selling these large amounts of cocaine is a Hispanic male who resides at the Cimarron apartments.
> Your affiant states that he received information from a confidential informant (CI), that the Hispanic male was selling and storing large amounts of cocaine out of his apartment located at 13223 East 31st Place #1313.
> Your affiant further states that he met with his confidential informant at an undisclosed location. Your affiant searched the confidential information and also search their vehicle. No illegal drugs or money was discovered on the confidential informant. The confidential informant was given an amount of U.S. currency for the purchase of an amount of cocaine.

13

Your affiant further states that, within the last 72 hours, your affiant's CI went to the above-described residence located at 13223 East 31st Place #1313. Your affiant and various surveillance officers followed the CI to the aforementioned residence. The confidential informant met the target in the parking lot adjacent to building 13223. After meeting with the target, surveillance officers followed the target to building 13223 and watched him unlock the door to apartment #1313. The target was in his apartment for approximately 3 to 5 minutes. Surveillance officers then watched the target exit the apartment and meet with the CI. At no time did the CI ever leave the parking lot or ever meet with someone other than the target. Once the target was with the CI, it appeared that he gave the CI something. The exchange was quick and after the exchange surveillance again followed the target to apartment #1313.

Your affiant further states that surveillance officers then followed the CI out of the parking lot to a prearranged meeting spot. At no time did the CI ever divert to somewhere else. Surveillance officers followed the CI to the prearranged meeting spot. The CI gave your affiant an amount of cocaine that was purchased from the aforementioned target. Your affiant searched the CI again and found no additional monies or drugs on their person. Your affiant also searched the CI's vehicle and found no additional monies or drugs.

Your affiant states that he conducted a field test of the suspected cocaine that was given to him by the confidential informant. The field test showed a presumptive positive test for cocaine hydrochloride. The cocaine was turned in on property receipt #BA 6530 to Uniform Division East.

Your affiant further states that while doing surveillance, officers observed the aforementioned target get into a red Pontiac Firebird bearing tag #773-ZRZ. This vehicle checks back to a Joel and Angelica Robles. Officers also observed the target get into a black Honda Passport bearing tag #119-ZNT. This vehicle was driven by a female and checks back to Volvo of Tulsa. Your affiant also contacted the apartment manager and inquired as to the individual who was renting apartment 1313. Apartment management gave the name of Alberto Avalos. Avalos has lived at the apartment for about a year.

Your affiant states that on 033006 surveillance officers were watching our target and observed him get into the black Honda Passport driven by a female. Officers followed the vehicle to a Braums located at Union and 334d West Avenue. Officers observed the black Honda Passport pull up next to a white Nissan Altima occupied by a white male and white female. Surveillance officers observed the white male get out of the passenger side of the vehicle and get into the back seat of the black Honda Passport. It appeared that a drug transaction was taking place. After a few minutes the white male, later identified as Shaun Bury, exited the Honda Passport and get [sic] back into the white Altima.

Your affiant further states that both vehicles left and officers were able to follow both the white Altima and black Passport. When the Altima finally pulled into a residence, Officers contacted both the driver and passenger and discovered approximately 5 ounces of crystal methamphetamine (field test presumptive

positive). Bury wanted to cooperate with officers and stated that he had just been "fronted" four ounces of methamphetamine from the Hispanic male that he had met at the Braums. According to Bury, the Hispanic male spoke very little English so the female driver of the black Passport translated everything between the two men. Bury went on to state that he had bought from the Hispanic male on a previous occasion and that the Hispanic male was nicknamed "Shorty". It should be noted that surveillance officers followed the black Passport to 13223 East 31st Place and watched the target go to apartment 1313.

        Your affiant states that in common drug parlance "fronted" describes an arrangement where a large dealer will provide an amount of illegal drugs at no immediate charge to a smaller dealer but with a set price attached. This is done with the expectation that the smaller dealer will then sell the drugs that were "fronted" for a slightly higher price that the acquisition price, remand the larger dealers agreed price to him and then keep the balance as a profit.

        Your affiant further states that the individual driving the red Firebird, the passenger in the black Passport, and the individual who met both the confidential information and Shaun Bury, was the same person. It is not uncommon for large-scale drug dealers to [sic] other people's names on property they own or residences they rent. This is a common practice that is utilized to avoid detection by law enforcement.

. . .

        Your affiant further states that he respectfully requests he be granted a Tulsa county search warrant based on the above-stated facts and evidence for 13223 East 31st Place #1313, city of Tulsa, Tulsa county.

(*See* Doc. 45-1.) This affidavit is replete with probable cause supporting a search of Defendant's apartment. Wolthius observed Defendant sell cocaine in a controlled buy and observed Defendant during what officer suspected to be a drug transaction. In addition, Wolthius observed Defendant come and go from the targeted residence on numerous occasions.

To the extent Defendant is attempting to argue that the Apartment Search was invalid because some other Hispanic male, and not Defendant, was the actual target of the investigation of the Search Warrant, this is belied by the record. The names listed on the Search Warrant include "Alberto Avalos." Alberto Avalos is the name signed by Defendant himself on the plea agreement, and it is also listed as an "a/k/a" on the Indictment. Defendant does not dispute that officers conducted surveillance on Defendant's residence, obtained a search warrant for Defendant's

15

residence, found Defendant asleep at that residence, and then arrested Defendant. This is simply not a case where there could be some other person that the prosecution intended to charge instead of Defendant.

Under the circumstances presented, Graves had no basis for challenging the Apartment Search. Competent counsel could have reasonably concluded that the Apartment Search was conducted pursuant to a valid search warrant and that any motion to suppress would have been meritless. *See Jackson*, 252 Fed. Appx. at 921 (affirming district court's conclusion that counsel's failure to file motion to suppress did not fall below objective standard of reasonableness where record supported conclusion that investigators had reasonable suspicion criminal activity was afoot prior to vehicle stop and had probable cause to arrest based on drugs and firearm found on the defendant's person).

2. Motel Search

With respect to the Motel Search, Defendant argued:

[T]here was absolutely no hot pursuit of Petitioner, or others, into the motel room; no drug purchases made from the room; no drug purchases from any of the occupants of the room; or any other reason to enter the room without a warrant – arrest or search. So Petitioner is absolutely lost as to why the agents even entered the motel room and searched it in the first place – much less why it was that they arrested him.

(Memorandum in Support of § 2255 Motion 17.)

Defendant is correct that the Motel Search was a warrantless search and that there was no "hot pursuit." However, according to the written statement in the plea agreement signed by Defendant, Defendant consented to the Motel Search: "Officer Wolthius asked if he could search his room and Mr. Avalos said "'Yes, go ahead.' All questions were asked in English then translated in Spanish. Prior to asking the same questions in Spanish, Mr. Avalos confirmed that he understood

16

the questions being asked of him in English." (Plea Agreement, Ex. 1 to Doc. 24, at 10.) Officers then entered using Defendant's room key. Following the consensual search, officers found cocaine in Defendant's motel room and arrested him.

In his § 2255 Motion, Defendant has not denied giving consent or denied understanding that he was giving consent. There is no record evidence or even argument by Defendant indicating that Graves had grounds to dispute the consensual nature of the Motel Search. Therefore, competent counsel could have reasonably concluded that the Motel Search was conducted pursuant to Defendant's consent and that any motion to suppress would have been meritless. *See Jackson*, 252 Fed. Appx. at 921.

B.      Ground 2- Failure to File Motion to Dismiss

Defendant's argument in Ground 2 also relates to the Arrest Warrant and the lack of reliability of a "CI." Defendant contends:

> Petitioner was the mistaken person of the original criminal complaint filed in the underlying arrest. He was not the person that is alleged to have made a sale of narcotics to a CI. So the Complaint is faulty as it was falsely issued without probable cause to believe Petitioner committed any crime. . . . Petitioner deems that the false and misleading information given to the magistrate clearly undermines the validity of the arrest warrant. Especially when the magistrate was not provided with reliable information and collaborating evidence as to why the CI should be believed.

(Br. in Support of § 2255 Mot. 17.) As explained above, there was no information regarding a CI supporting Judge Cleary's execution of the Arrest Warrant. Such warrant was supported by the Yates affidavit, which simply set forth the fruits of the Apartment Search.

The Court believes Defendant is attempting to argue that Graves should have moved to dismiss the charges against Defendant because he was not actually the person identified by the CI described by Wolthius in the affidavit supporting the Search Warrant. The Court has already

17

rejected this mistaken identity argument as without factual support. Nor does the Court find that Graves had any other grounds to move to dismiss the charges based. Therefore, Graves was not deficient in failing to file a motion to dismiss challenging the Court's "jurisdiction" over Defendant or challenging whether Defendant was the actual individual named in the Indictment.

      C.      <u>Ground 3 - Advice to Enter Plea of Guilty</u>

Defendant contends that – in light of the meritorious motions to dismiss and suppress that a competent lawyer would have filed – Graves gave ineffective assistance of counsel by advising Defendant to plead guilty without first filing such motions. The Court has rejected Grounds 1 and 2 and also rejects Ground 3. If counsel was not deficient by failing to file these motions, counsel was not deficient in advising Defendant to plead guilty to a plea deal that resulted in dismissal of six of the ten charges against him.

      D.      <u>Ground 4- Failure to Obtain Agreement for Statutory Minimum Sentence</u>

This argument also relates to Defendant's contention that certain drug evidence was inadmissible. Defendant contends that "the problematic nature of the seizure and evidence could have easily been 'dealt with' in the plea negotiations. Trial counsel could have had a stipulation made to a lessor [sic] drug quantity . . . ." (Br. in Support of § 2255 Mot. 20.) The Court easily disposes of Ground 4. First, as explained above, Graves was not deficient in concluding and advising Defendant that all drugs seized during the Apartment Search and Motel Search were admissible evidence. Second, Graves negotiated for Defendant by getting several counts dismissed, including a possession in furtherance of charge which would have carried a mandatory minimum and which would have run consecutively to any other sentence. Graves was in no way deficient for not also negotiating some type of agreed upon sentence for the remaining counts. Given the quantity

of drugs involved and seriousness of the crimes charged in this case, such a deal would have been difficult if not impossible for any defense counsel to obtain. *See generally United States v. Garcia*, 413 Fed. Appx. 57, 60 (10th Cir. 2011) (holding that counsel did not perform deficiently in failing to negotiate a lower sentence because the defendant ultimately received a below-guidelines sentence); *United States v. Johnson,* 2005 WL 2663112, at *3 (D. Kan. Oct. 19, 2005) (holding that counsel did not perform deficiently by failing to obtain a plea agreement that allowed a reduction for substantial assistance).

## IV.     Certificate of Appealability

Rule 11 of the *Rules Governing Section 2255 Cases in the United States District Courts* instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's ruling is debatable or incorrect. The record is devoid of any authority

19

suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

**V.     Conclusion**

Defendant's § 2255 Motion (Doc. 33) is DENIED; and Defendant's Motion for Order to Compel Attorney Gregg Lee Graves to Forward Petition His "Case File" (Doc. 36) is DENIED as moot. The Court has reviewed the record and finds no purpose in compelling the case file. A separate judgment will be entered.

**DATED THIS 24th day of August, 2011.**

*[signature]*

**TERENCE C. KERN
UNITED STATES DISTRICT JUDGE**